UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**RANDALL TURNER,**

          Plaintiff,

   v.

**MULTNOMAH COUNTY, a political subdivision of the State of Oregon; WASCO COUNTY, a political subdivision of the State of Oregon; GILLIAM COUNTY, a political subdivision of the State of Oregon; HOOD RIVER COUNTY, a political subdivision of the State of Oregon; SHERMAN COUNTY, a political subdivision of the State of Oregon; and OLE LLOYD ANDERSON ERSSON, M.D.; MONICA WAHLS, N.P.; NORTHERN OREGON CORRECTIONAL FACILITY,**

          Defendants.

Civil Case No. 3:12-CV-01851-KI

OPINION AND ORDER
ON NORCOR'S MOTION FOR
SUMMARY JUDGMENT

Page 1 - OPINION AND ORDER ON NORCOR'S MOTION FOR SUMMARY JUDGMENT

>Martin R. Reeves
>Reeves, Kahn, Hennessy & Elkins
>4035 SE 52nd Ave.
>P.O. Box 86100
>Portland, OR 97286
>
>>Attorney for Plaintiff
>
>Michael A. Lehner
>Lehner & Rodrigues, PC
>1500 SW First Ave., Suite 900
>Portland, OR 97201
>
>>Attorney for NORCOR

KING, Judge:

Plaintiff Randall Turner, a federal inmate housed at Inverness Correctional Facility in Multnomah County and at Northern Oregon Correctional Facility ("NORCOR") during the events alleged in his complaint, brings a complaint against Multnomah County, NORCOR, Dr. Ole Lloyd Anderson Ersson, and Nurse Practitioner Monica Wahls.[1]  Pending before me is NORCOR's Motion for Summary Judgment [32].  For the following reasons, I grant the motion.

## BACKGROUND

Turner alleges that, while being held at Inverness in the summer of 2010, he began to suffer numbness and pain in his neck, hands, and arms.  He was transferred to NORCOR in July 2010 "where he continued to voice his concerns regarding his deteriorating medical condition." Second Am. Compl. ¶ 3.  Following his complaints, he was given pain medication.  His foot began to drag in September 2010, but Wahls at NORCOR diagnosed him as a malingerer "and no testing or further inquiry into his symptoms was done." Id. at ¶ 5.

---

[1] The defendant counties listed in the caption previously were dismissed.

He was transferred back to Inverness on September 23, 2010, where Dr. Ersson also characterized him as a malingerer and ordered observation. In November 2010, four months after his first request, Turner received an MRI at OHSU and was referred to a neurosurgeon. On January 8, 2011, Turner developed acute respiratory failure and was taken to Portland Adventist, where he was diagnosed with pulmonary embolisms; he was in a coma for twelve days and did not return to Inverness until January 26, 2011. Turner alleges staff then interfered with his oxygen. He finally received spinal fusion and a laminectomy in August of 2011. He alleges permanent spinal cord damage, respiratory failure, kidney damage, brain damage, and vascular damage as a result of the delay and poor medical care.

I permitted Turner to amend his complaint. His Second Amended Complaint, filed on May 15, 2013, no longer alleges a § 1983 claim against NORCOR. Instead, Turner alleges negligence against Multnomah County, NORCOR, Dr. Ersson, and Wahls. He also alleges claims of medical malpractice and § 1983 deliberate indifference to medical needs against Dr. Ersson and Wahls.

As relates to NORCOR's motion, Turner specifically alleges:

Defendants [including NORCOR] were negligent in one or more of the following particulars:

a. In failing to diagnose and treat the neurological progressive and severe diseases he was suffering from, spinal stenosis;

b. In failing to obtain a qualified medical evaluation of Turner;

c. In failing to refer him for a neurological/neurosurgical consultation; and

d. In failing to provide him with medical care and treatment associated with the minimal standards of a competent medical professional.

Second Am. Compl. ¶ 19.

NORCOR contracts with third-party Correctional Healthcare Management, Inc. ("CHM") to provide medical care at the facility, and Wahls is employed by CHM. Pursuant to agreement, NORCOR, which is required "to provide for the delivery of quality health care" to its inmates, hired CHM to "administer such services on behalf of NORCOR." See Aff. of Jim Weed, Ex. A, at 1, Agmt. Recitals (hereinafter "Agreement" or "Agmt."). The Agreement requires CHM to assess new inmates within 14 days of their arrival at NORCOR, pursuant to standards set forth by The National Commission on Correctional Health Care. It also requires a "qualified healthcare professional" to conduct timely sick calls for inmates. Agmt. 1.1.3. CHM health care staff may also collect physical evidence during body cavity searches. CHM's Chief Medical Officer makes determinations about whether a surgery is elective or not, although the parties must jointly agree equipment costing over $100 is required to assist in providing health care services to inmates. CHM monitors and pays for prescription and non-prescription medications. CHM must maintain appropriate insurance coverage.

CHM does not provide dental services, long term care, hospitalization, mental health services, vision care, or medical services requiring a specialty license. NORCOR covers the cost of office supplies and equipment, pathology/radiology services, medical supplies and equipment under $100 and must pay for the removal of medical waste. NORCOR must also provide nursing and medical records services.

The Agreement requires CHM to staff a set number of hours a week, prohibits CHM from changing staff members without prior notice to NORCOR, and allows NORCOR to screen staff for security risks. It allows NORCOR and CHM to mutually agree to change staffing hours, so

Page 4 - OPINION AND ORDER ON NORCOR'S MOTION FOR SUMMARY JUDGMENT

long as any change complies with the advice of CHM's physician. It also gives NORCOR authority to have a staff person removed from NORCOR, after a 10-day period of negotiation. Specifically, Article 2.4 reads:

> 2.4 SATISFACTION WITH HEALTH CARE STAFF. In recognition of the sensitive nature of correctional facility operations, if the ADMINISTRATOR [NORCOR] becomes dissatisfied with any member of the HEALTH CARE STAFF, the ADMINISTRATOR shall provide CHM written notice of such dissatisfaction and the reasons therefore. Following receipt of such notice, CHM shall use commercially reasonable efforts to resolve the dissatisfaction. If the problem is not resolved to the satisfaction of the ADMINISTRATOR within ten (10) business days following CHM's receipt of the notice, CHM shall remove the individual from providing services at the CORRECTIONS CENTER within a reasonable time frame considering the effects of such removal on CHM's ability to deliver health care services and recruitment/hiring of an acceptable replacement. The ADMINISTRATOR reserves the right to revoke the security clearance of any HEALTH CARE STAFF at any time.

In addition, the Agreement permits NORCOR to reject the advice of CHM to have an inmate released, transferred, or removed from NORCOR when the inmate's condition may be worsened by incarceration, although it requires NORCOR to "make every effort" to follow CHM's advice. Agmt. 7.1. The Agreement requires NORCOR to make the facility safe and requires CHM to comply with security procedures; it also permits CHM staff members to refuse to provide any service if they deem the current safety conditions to be insufficient. CHM staff are also required to comply with any posted security policies and procedures which impact medical services, although CHM's Jail Health Care Policies and Procedures trump any conflicting NORCOR policies. CHM must educate NORCOR healthcare employees, deputies and jailers on health and mental health practices and must meet quarterly with NORCOR about health care services and any proposed changes in procedures.

Finally, the Agreement characterizes the relationship between the parties as follows:

> Nothing in this AGREEMENT shall be construed to create an agency relationship, an employer/employee relationship, a joint venture relationship, or any other relationship allowing NORCOR or ADMINISTRATOR to exercise control or direction over the manner or methods by which CHM, its employees, agents or subcontractors perform hereunder[.]

Agmt. 11.0.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." Nicholson v. Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

I.   Agency Relationship

NORCOR argues the court should grant it judgment against the only claim Turner alleges against it–negligence. It contends the negligence claim Turner alleges is one of vicarious liability for Wahls' actions. NORCOR's sole argument, then, is that a jury could not find it vicariously liable for Wahls' actions because Wahls is neither its employee nor its nonemployee agent;

rather, NORCOR contracts with third-party CHM to provide medical care at the facility, and Wahls is employed by CHM.

As the court in Viado v. Domino's Pizza, LLC, 230 Or. App. 531, 217 P.3d 199 (2009) explained, there are three questions to answer in deciding whether an entity is vicariously liable for the acts of a contractor's employee. The first question is "whether the relationship in question is one of 'agency.'" Viado, 230 Or. App. at 533. To be an agent, "'(1) the individual must be subject to another's control; and (2) the individual must act on behalf of the other person.'" Id. (quoting Vaughn v. First Transit Inc., 346 Or. 128, 135-36, 206 P.3d 181 (2009) (internal quotation marks omitted)). If CHM is an agent of NORCOR's, then Wahls, as an employee of CHM, is also an agent of NORCOR's. Id. at 534 n.2; see also Vaughn, 346 Or. at 135 n.5.

NORCOR does not appear to dispute that CHM and Wahls were acting on behalf of NORCOR. See Agmt. Recitals ("WHEREAS, CHM is in the business of administering correctional health care services and desires to administer such services on behalf of NORCOR"). The question is whether a reasonable juror, viewing the facts in the light most favorable to Turner, would conclude CHM and Wahls were subject to NORCOR's control. In contrast to the contracts described in Vaughn and Viado, the Agreement here sets out very few provisions giving NORCOR control over CHM's provision of services. For example, in Vaughn, the Port had authority to "unilaterally adjust" the shuttle company's budget, to take control of the shuttle service, required certain appearance and behavior standards for employees, required the shuttle company to implement a training program for drivers subject to modification by the Port, and required the company to screen its drivers. 346 Or. at 132, 141. In Viado, the franchise

Page 7 - OPINION AND ORDER ON NORCOR'S MOTION FOR SUMMARY JUDGMENT

agreement set out detailed rules about safety, cleanliness, and appearance of the store; qualifications, dress, and grooming of employees; quality, test, and uniformity of the food; receiving, preparing, and delivering customer orders; hours open for business; signage; handling of customer complaints; advertising; and method and manner of payment.  230 Or. App. at 543. Nevertheless, viewing the facts in the light most favorable to Turner, I accept that CHM and Wahls were subject to NORCOR's control–quarterly reporting requirements, staff subject to NORCOR's approval, specified staffing hours, and security protocols–sufficient to create an agency relationship.

The next question, then, is "what *type* of agency." Viado, 230 Or. App. at 534.  As the Vaughn court explained, agents can be employees or non-employee agents.  The distinction is important because

> a principal's liability for the torts of its agents varies based upon the type of agent. In general, a principal is liable for all torts committed by its employees while acting within the scope of their employment.  But a principal ordinarily is *not* liable in tort for physical injuries caused by the actions of its agents who are not employees.  Rather, a principal is vicariously liable for an act of its nonemployee agent only if the principal intended or authorized the result or the manner of performance of that act.

Vaughn, 346 Or. at 137-38 (internal citations and quotation marks omitted).

Although Turner appears to agree Wahls was not an employee of NORCOR, he cites multi-factor tests used to determine whether an individual is an employee.  See Woody v. Waibel, 276 Or. 189, 196, 554 P.2d 492 (1976) (test for determining "master-servant relationship"); Kowaleski v. Kowaleski, 235 Or. 454, 460-61, 385 P.2d 611 (1963) (same). Accordingly, I will quickly address this question.  Under the multi-factor test set forth in

Kowaleski,[2] no reasonable juror could conclude on this record that Wahls was NORCOR's employee. The Agreement does not allow NORCOR to direct Wahls in the way she performed examinations, the steps she took in evaluating patients, or how she came to her conclusions; NORCOR did not pay Wahls; the parties never intended to create an employment relationship; the work Wahls performed was distinct from the work NORCOR staff performed; and the type of work Wahls performed is work typically done by a specialist and not normally at the direction of an employer.

Since Wahls was not an employee, the final question is whether NORCOR can be liable for Wahls' actions because she was a nonemployee agent. In order to answer that question, I must look to see whether Turner advanced sufficient evidence of a "connection between [NORCOR's] 'right to control' [Wahls'] actions and the specific conduct giving rise to the tort claim." Viado, 230 Or. App. at 540. The question is settled by Vaughn. In that case, although the shuttle company was an "agent" of the Port, the Port was not vicariously liable for the negligent driving of the shuttle driver. The Port retained the right to reject the company's employees and to give "interim instructions," but it did not retain the right to control the day-to-day performance of the bus drivers. Vaughn, 346 Or. at 140. Turner offers no evidence suggesting NORCOR exerted any control over the way in which Wahls treated patients, which is the basis for his negligence claim. Because Turner cannot point to any facts suggesting

---

[2]The ten factor test focuses on: (1) the extent of control over details of the work; (2) whether or not the one employed is engaged in a distinct occupation or business; (3) whether the work is usually done under the direction of the employer; (4) the skill required; (5) who supplies the tools and place of work; (6) the length of time for which the person is employed; (7) the method of payment, whether by the time or by the job; (8) whether the work is part of the regular business of the employer; (9) whether the parties believe they are creating an employment relationship; and (10) whether the principal is in business. Kowaleski, 235 Or. at 460-61.

Page 9 - OPINION AND ORDER ON NORCOR'S MOTION FOR SUMMARY JUDGMENT

NORCOR had the right to control Wahls' provision of medical services just as it would have the right to control the work of its own employees, NORCOR cannot be liable for Wahls' negligence. Vaughn, 346 Or. at 139 ("Only when the principal's control over the agent with respect to the actions of the agent that gave rise to the tort claim is similar to the control that an employer exercises over an employee will the principal be vicariously liable for the negligence of its nonemployee agent.").

Finally, although Turner contends this is a jury question, Turner has not offered any evidence other than the language of the Agreement itself. In other words, there are no conflicting facts for a jury to resolve. See Schaff v. Ray's Land & Sea Food Co., Inc., 334 Or. 94, 101 (2002) (jury may "resolv[e] any conflicting facts or inferences on the basis of proper instructions" although employment status is a conclusion of law); Wallowa Valley Stages, Inc. v. Oregonian Pub. Co., 235 Or. 594, 600, 386 P.2d 430 (1963) ("Whether or not a given person is the servant or the contractor of another is ordinarily a question of law, when the facts are clear.")

In sum, NORCOR is entitled to judgment because it cannot be vicariously liable for Wahls' negligence.

II.     Whether NORCOR's Duty is Nondelegable

Turner alternatively argues that even if Wahls is an independent contractor, NORCOR's duty to provide medical care is a nondelegable duty making NORCOR liable for the acts of its independent contractor. "Nondelegable duties arise in situations in which the law deems a particular duty so important and so peremptory that it will be treated as nondelegable." Johnson v. Salem Title Co., 246 Or. 409, 413, 425 P.2d 519 (1967) (citing Restatement (Second) of Torts § 424 (1965)). One type of nondelegable duty is imposed by statute. Turner cites no statutes, but

contends NORCOR had a duty under the Eighth Amendment of the U.S. Constitution and Article I of the Oregon Constitution to provide adequate medical care to its prisoners.

NORCOR contends this is an argument that works only when a plaintiff alleges direct liability, not vicarious liability. However, NORCOR is incorrect in its reading of the law. NORCOR can be vicariously liable for the negligence of Wahls under this nondelegable duty theory "irrespective of whether [NORCOR] has [itself] been at fault. The [rules] arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor." Restatement (Second) of Torts Intro. Note to §§ 416-429 (2013); see also Johnson, 246 Or. at 415 (specifically noting that the doctrine holds the employer liable for the independent contractor's negligence even when he has done nothing wrong; "They are thus cases of vicarious liability.").

Nevertheless, Johnson, the case on which Turner relies, turned to building code provisions to hold an architect liable for the negligence of an engineer. Turner has cited no case in Oregon, and I could find none, in which Oregon courts have applied the nondelegable duty doctrine in the context of medical care in a prison. I decline to do so here.

III.     Amendments

Turner argues NORCOR's new position that it lacked authority to control, evaluate, or otherwise ensure Turner received adequate medical care opens a door allowing him to amend. His claim would be that NORCOR has engaged in a "scheme" to "abrogate" its constitutional duty to provide medical care. It has contracted away its right to control medical care, thereby instituting a policy of willful blindness equal to deliberate indifference. Accordingly, Turner

requests leave to amend his complaint to allege a § 1983 claim of deliberate indifference to his medical needs in violation of the Eighth Amendment.

The decision whether to grant or deny leave to amend is within the discretion of the district court. California v. Neville Chemical Co., 358 F.3d 661, 673 (9th Cir. 2003). The court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Absent bad faith, undue delay, prejudice to the opposing party, or futility, a motion for leave to amend should be granted. DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987).

The First Amended Complaint that Turner filed in state court, and which defendants removed to this Court, is dated September 19, 2012. I previously allowed Turner permission to amend, and he filed his Second Amended Complaint on May 15, 2013. He did not allege a § 1983 claim at that time. However, delay alone is insufficient to justify denial of leave to amend, and NORCOR does not assert prejudice or bad faith should preclude the amendment. Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999).

Nevertheless, I find the amendment would be futile. "A municipality may be held liable under a claim brought under § 1983 only when the municipality inflicts an injury, and it may not be held liable under a respondeat superior theory." Gibson v. Cnty. of Washoe, Nev., 290 F.3d 1175, 1185 (9th Cir. 2002) (citing Monell v. NYC Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). Accordingly, NORCOR could only be liable under § 1983 if "the action that is alleged to be unconstitutional implements or executes a . . . decision . . . promulgated by that body's officers" or if the constitutional deprivation was "visited pursuant to governmental 'custom[.]'" Monell, 436 U.S. at 690-91. I assume without deciding that NORCOR's contract with CHM meets this criteria.

Page 12 - OPINION AND ORDER ON NORCOR'S MOTION FOR SUMMARY JUDGMENT

In addition, however, Turner must prove that NORCOR acted with the state of mind required to prove the underlying Eighth Amendment violation. Id.  As a result, Turner must allege NORCOR's use of a third-party medical provider posed a substantial risk of serious harm to Turner, and it knew that its policy posed this risk.  Gibson, 290 F.3d at 1188.  Turner has failed to identify any facts that could meet this high burden.  Indeed, there could be no "scheme" of NORCOR's to avoid its constitutional obligation to provide medical care because NORCOR cannot avoid Eighth Amendment liability by doing so.  As the Supreme Court has recognized, "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights."  West v. Atkins, 487 U.S. 42, 56 (1988).  The way prisoners vindicate their Eighth Amendment rights is by bringing suit against the medical professionals who are deliberately indifferent to their medical needs.

## CONCLUSION

For the foregoing reasons, NORCOR's Motion for Summary Judgment [32] is granted and the claim against NORCOR is dismissed with prejudice.

IT IS SO ORDERED.

DATED this     30th     day of October, 2013.


    /s/ Garr M. King
Garr M. King
United States District Judge

Page 13 - OPINION AND ORDER ON NORCOR'S MOTION FOR SUMMARY JUDGMENT